# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57419-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JORDAN THOMAS GODSEY, | |
| Appellant. | |

MAXA, P.J. – Jordan Godsey appeals his sentence for convictions of four counts of first degree possession of depictions of minors engaged in sexually explicit conduct and the trial court's imposition of community custody supervision fees. In a statement of additional grounds (SAG), Godsey challenges his convictions.

We hold that (1) as the State concedes, the trial court imposed a term of confinement and a term of community custody that exceeded the statutory maximum sentence; (2) as the State concedes, the community custody supervision fees imposed in the judgment and sentence must be stricken; and (3) we reject or decline to consider under RAP 10.10(c) Godsey's SAG claims relating to his convictions. Accordingly, we affirm Godsey's convictions, but we remand for the trial court to correct the term of community custody so Godsey's sentence does not exceed the statutory maximum and to strike the community custody supervision fees from the judgment and sentence.

FACTS

*Background*

In November 2020, the Chehalis police department received a tip from the Seattle Internet Crimes against Children ("ICAC") task force that Godsey was downloading images of children engaged in sexual activity. CP 37. ICAC is a law enforcement agency task force that investigates crimes against children on the internet, including child pornography. The ICAC report stated that the images were downloaded by Godsey associated with the e-mail Jordan_godsey@hotmail.com. Daniel Dozois, a detective with Chehalis police, conducted an IP address search and confirmed that the images had been accessed from an address where Godsey resided.

The ICAC report contained links to six images. Dozois reviewed the images and determined that they appeared to be depictions of young girls engaged in sexual activity.

*Search Warrants for Electronic Devices*

Chehalis police obtained a warrant to search the electronic devices at Godsey's residence. The original warrant authorized law enforcement to "[e]xtract the information which are evidence of the above crimes." Clerk's Papers (CP) at 25. The relevant "above crimes" were listed as "RCW 9.68A.075 Viewing Depictions of a Minor Engaged in Sexually Explicit Conduct" and "RCW 9.65A.070 Possession of Depictions of Minor Engaged in Sexually Explicit Conduct." CP at 24. The warrant did not specify what information should be extracted from the electronic devices.

When the warrant was executed, law enforcement seized two phones in Godsey's possession and a desktop computer. The phones and the computer contained hundreds of images and/or videos depicting minors engaged in sexually explicit conduct.

In June 2021, the State charged Godsey with four counts of first degree possession of depictions of a minor engaged in sexually explicit conduct.

Godsey moved to suppress the evidence obtained from his electronic devices pursuant to the original search warrant, arguing that the warrant failed to describe with particularity the things to be seized. In response, Chehalis police requested a new warrant. The new warrant declaration stated,

> This Affidavit for Warrant has been amended and is being submitted to correct any arguable over breadth of the original warrant. The Affidavit and Warrant were previously submitted and granted and the defense has filed a motion to exclude evidence based on warrant over breadth. Pursuant to *State v. Betancourth*, 190 Wn.2d 357 (2018) and *State v. Miles*, 159 Wn. App. 282 (2011), the State is asking for a "do-over" warrant. The information submitted to support this affidavit is not altered in any way based on evidence found during the original search(es). Further, the State does not intend to re-search the devices, this is merely being done in an effort to rectify any arguable errors in the original warrant.

CP at 35. The declaration essentially was the same as the declaration to obtain the original warrant. The trial court issued a new warrant, which specifically directed law enforcement to search for "depictions of minors engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) (a thru g)." CP at 43.[1]

Following a CrR 3.6 hearing, the trial court issued an order denying the motion to suppress. The court concluded that the first warrant was not overbroad and was sufficiently specific, and the second warrant "provided an added layer of protection, and is an independent source for the evidence collected." CP at 51.

---

[1] The trial court actually issued two essentially identical warrants, one that expired after 10 days and another that was issued 11 days later.

*Trial and Conviction*

At trial, Dozois testified that when officers executed the search warrant, they seized two cell phones that were in Godsey's pocket and a desktop computer that was in Godsey's room. Godsey was using the computer when law enforcement arrived.

Godsey provided Dozois with the passcode for the phones. When Dozois accessed the phones, he found suspected depictions of minors engaged in sexually explicit conduct in the Google Photos application and other applications.

A forensic search was conducted of the two phones and the computer. This search revealed likely depictions of minors engaged in sexually explicit conduct on all three devices, 412 images and/or videos on one phone, 188 images and/or videos on the second phone, and 114 images and/or videos on the computer. The trial court admitted into evidence 10 images of young girls engaged in sexually explicit conduct.

The jury found Godsey guilty of all four counts as charged. The trial court sentenced Godsey to 89.5 months in confinement and 36 months of community custody. The judgment and sentence contained a provision that mandated payment of community custody supervision fees.

Godsey appeals his convictions and sentence.

ANALYSIS

A.      SENTENCE EXCEEDING STATUTORY MAXIMUM

Godsey argues, and the State concedes, that his sentence is unlawful because the combination of his term of confinement and his term of community custody exceeds the statutory maximum sentence. We agree.

A defendant's total sentence cannot exceed the statutory maximum for the offense, including sentence enhancements and community custody. RCW 9.94A.505(5); *State v.*

*LaBounty,* 17 Wn. App. 2d 576, 582, 487 P.3d 221 (2021). First degree possession of depictions of minors engaged in sexually explicit conduct is a class B felony. RCW 9.68A.070(b). The statutory maximum for a class B felony is 120 months. RCW 9A.20.020(1)(b).

The trial court sentenced Godsey to 89.5 months in confinement and 36 months of community custody, for a total of 125.5 months. This sentence exceeds the statutory maximum of 120 months. Therefore, the term of community custody must be reduced so the total sentence does not exceed the statutory maximum. RCW 9.94A.701(10).

We remand for the trial court to correct the term of community custody in Godsey's judgment and sentence.

B.      COMMUNITY CUSTODY SUPERVISION FEES

Godsey argues, and the State concedes, that the community custody supervision fees should be stricken from the judgment and sentence. We agree.

Godsey was sentenced in October 2022. Effective July 2022, RCW 9.94A.703(2) no longer authorizes the imposition of community custody supervision fees. *State v. Ellis,* 27 Wn. App. 2d 1, 17, 530 P.3d 1048 (2023). Therefore, we remand for the trial court to strike the imposition of the community custody supervision fees.

C.      SAG CLAIMS

1.   Improper Search Warrant

Godsey asserts that the trial court erred in denying his motion to suppress evidence seized from his electronic devices because the search warrant failed to describe with sufficient particularity the things to be seized. We disagree.

a.   Legal Principles

The Fourth Amendment to the United States Constitution provides that "no [w]arrants

shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This amendment was designed to prohibit "general searches," and to prevent " 'general, exploratory rummaging in a person's belongings.' " *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992) (quoting *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)). Similarly, article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Under these constitutional provisions, a search warrant must be sufficiently particular so that the officer executing the warrant can reasonably ascertain and identify the property authorized to be seized. *State v. Besola*, 184 Wn.2d 605, 610, 359 P.3d 799 (2015). The particularity requirement both "limit[s] the executing officer's discretion" and "inform[s] the person subject to the search what items the officer may seize." *State v. Riley*, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993). "Warrants for materials protected by the First Amendment require a heightened degree of particularity." *Besola*, 184 Wn.2d at 611. For these materials, the particularity requirement must be strictly applied. *Id.*

   b. Validity of First Search Warrant

It is unclear whether Godsey is challenging the first warrant or the second warrant. But whether the first search warrant satisfied the particularity requirement is immaterial because the trial court issued a second search warrant that was more particular.

If the evidence procured by unlawful police action was "obtained pursuant to a valid warrant or other lawful means independent of the unlawful action," the evidence is not subject to exclusion under the independent source doctrine. *State v. Betancourth,* 190 Wn.2d 357, 364-365, 413 P.3d 566 (2018). Courts determine whether challenged evidence has an independent

source by inquiring whether the illegally obtained information affected (1) the magistrate's decision to issue the warrant or (2) the decision of the state agents to seek the warrant. *Id.* at 365. If the illegally obtained information did not affect the magistrate's decision to issue the warrant or the decision of the state agents to seek the warrant, then the evidence is "admissible through the lawful warrant under the independent source doctrine." *Id.*

In *Betancourth,* the district court issued a search warrant for an out-of-state cell phone carrier and the carrier provided the records. 190 Wn.2d at 360-61. However, the superior court later ruled in a separate case that only superior courts were authorized to issue out-of-state warrants. *Id.* at 361. Following this ruling, a detective obtained a second warrant from the superior court based on an affidavit that essentially was identical to the affidavit used to obtain the first warrant. *Id.* at 362. The detective sent the second warrant to the cell phone carrier, but they did not provide any new records because the records already had been provided. *Id.*

The Supreme Court held that the phone records were admissible based on the second, valid warrant under the independent source doctrine even though law enforcement did not reseize the records. *Id.* at 370-73. The court reasoned that the records were "untainted by any prior illegality" because the "decision to issue the 2013 superior court warrant [was not] affected by, or made in reliance on, information obtained from the illegal search*." Id*. at 370.

Here, the trial court's decision to issue the second warrant was not affected by or made in reliance on information obtained in the search pursuant to the first search warrant. The second search warrant declaration essentially was the same as the first search warrant declaration, and was based on the ICAC report. Therefore, under the independent source rule, the information obtained pursuant to the first search warrant is admissible regardless of whether it was valid, as long as the second search warrant was valid.

c.      Validity of Second Search Warrant

The first warrant simply referenced the applicable statutes but did not specifically identify the information for which law enforcement was authorized to search. The second warrant corrected this problem by authorizing law enforcement to search specifically for "depictions of minors engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) (a thru g)." CP at 43. We conclude that this language satisfied the particularity requirement.

Therefore, we hold that the trial court did not err in denying Godsey's suppression motion.

2.      Sufficiency of Evidence

Godsey asserts that his convictions must be reversed because the State failed to produce sufficient evidence that he *knowingly* possessed depictions of minors engaged in sexually explicit conduct. We disagree.

The test for determining the sufficiency of evidence is whether any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). We resolve all reasonable inferences based on the evidence in favor of the State and interpret inferences most strongly against the defendant. *Id.* Circumstantial evidence is as equally reliable as direct evidence. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

RCW 9.68A.070(1)(a) states that a person is guilty of first degree possession of depictions of a minor engaged in sexually explicit conduct "when he or she knowingly possesses a visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e)." A person acts knowingly when "(i) He or she is aware of

a fact, facts, or circumstances or result described by a statute defining an offense; or (ii) He or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b).

Here, the two phones in Godsey's possession and the computer seized by law enforcement pursuant to the search warrant contained hundreds of images and/or videos depicting minors engaged in sexually explicit conduct. When Dozois accessed Godsey's phones, he was able to see images depicting minors engaged in sexually explicit conduct.

Viewed in the light most favorable to the State, a rational trier of fact could reasonably infer that Godsey knew that depictions of minors engaged in sexually explicit conduct were on his phones and his computer. Therefore, we hold that there was sufficient evidence to support Godsey's convictions.

3. Vague Claims

In request for relief 3, Godsey references the "scope of [the] search warrant," but he does not explain the basis for any claim. SAG at 2. In request for relief 5, Godsey references "probable cause in the information granting [the] search warrant" and then references "defendant's known place of residence," "property to be searched ownership," and "owner of IP address/internet provider." SAG at 2. But Godsey does not explain the nature of any alleged errors.

Under RAP 10.10(c), we will not consider a SAG claim "if it does not inform the court of the nature and occurrence of alleged errors." Accordingly, we decline to address these claims.

CONCLUSION

We affirm Godsey's convictions, but we remand for the trial court to correct the term of community custody in Godsey's sentence so as not to exceed the statutory maximum and to strike the imposition of community custody supervision fees from the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
VELJACIC, J.

_____
CHE, J.